UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                       CASE NO.: 23-cr-00350

                                        HON. COLLEEN KOLLAR-KOTELLY

RUBEN REYNA

      Defendant.
_____/

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

I.

INTRODUCTION

Ruben Reyna is among the least culpable defendants to be charged in the events of January 6. He engaged in no violence, encouraged no violence, and did not come to Washington, D.C. prepared for violence. His feet never touched the floor of the Capitol building. When he entered the Capitol, he perched himself on a windowsill and took a video. He then left.

January 6th rioters have received sentences ranging from probation to years in custody. Their sentences are proportional to their participation in the offense. Mr. Reyna's participation was limited and, when entering the Capitol, he did have the belated realization that he should not be there and left. Since January 6 and its immediate aftermath, he has not advocated extremist political positions or disruptive

1

activity. There is no need for a custodial sentence to punish, deter, or rehabilitate Mr. Reyna. A probationary sentence with a community service component is sufficient to meet the goals of 18 U.S.C. § 3553. A heavy community service component will best help remedy some of the societal harm caused by Mr. Reyna's participation in the January 6 riot.

II.

FACTUAL INFORMATION

a.   Ruben Reyna's History

Ruben Reyna was born to a stable working-class family in Detroit, Michigan. He worked hard and went to college where he earned an engineering degree. After college he worked as an engineer until he was laid off during the pandemic. It was during this time that he became involved in following President Trump and attended the January 6th "Stop the Steal" rally.

Since that time, Mr. Reyna is again working. He is an engineer at Ford Motor Company. He has plead guilty and is willing to face the consequences of his actions, which he knows were wrong. However, he is seeking a sentence that will allow him to continue his employment.

b.   Mr. Reyna's Involvement in the January 6th Riot

Even before the 2020 election, President Donald Trump made statements intended to sow doubt about the results of the election. See Final Report of the Select Committee to Investigate the January 6th Attack on the United States Capitol, Chapter

1, Section 3. After he lost the election, Mr. Trump's rhetoric, intended to undermine public confidence in the election results and convince his supporters that he had won, only increased. Id. Chapter 1, Section 4 et seq.

Mr. Trump's comments were amplified through social media post, podcast, and blogs. It soon became clear that professional journalists were powerless to counter the false narrative being spun. Mr. Trump's rhetoric was intended to spur his supports to take action, including drastic action. Id. Chapter 6. Mr. Reyna was one person swayed by this rhetoric. He travelled to Washington, D.C. because he felt it was his patriotic duty. He came to support President Trump, not to engage in violent conduct. Unlike some other defendants who have come before this Court, Mr. Reyna did not prepare by packing a gas mask, a firearm, riot gear, or a bullet proof vest. His preparations were limited to bringing a heavy Detroit Red Wings sweatshirt to stay warm while attending the rally.

On January 6, he listened to Mr. Trump speak and, like many others in attendance, Mr. Reyna followed Mr. Trump's directions to march to the Capitol. There he followed the leaders of the mob onto the Capitol grounds and to the Capitol building. Approximately six minutes after the rioters breached the Senate Wing Door, Mr. Reyna climbed onto the sill of a broken window next to the that door and surveyed the interior of the Capitol. During the six minutes between the breach of that entrance and Mr. Reyna's arrival, hundreds of others had already entered the building.

After he began entering the Capitol by climbing through the window, Mr. Reyna had second thoughts about the extent of his participation and turned around after filming a short video of approximately one minute.

After January 6, Mr. Reyna, obviously not proud of what had happened at the Capitol, did attempt to downplay the violence at the Capitol and blame it on groups other than Trump supporters. But, in the years since January 6, 2021, he has not been overly involved with politics or encouraged others to engage in radical and disruptive political action.

## III.

## SENTENCING FACTORS

The above sections discuss the nature and circumstance of the offense (which are serious, but markedly less serious than those of many other January 6 participants) and the history and characteristics of the defendant (which are all positive). The remaining §3553 sentencing factors warrant a non-custodial sentence.

a. Respect for the Law

The prosecution of those who participated in the riot of January 6 is important. These prosecutions promote respect for the law. However, sentences of incarceration for those who participated, but did not engage in violence, were not leaders, and had no part in the planning of January 6 are not always necessary. Respect for the law must

be accomplished not simply by imposing harsh sentence, but by imposing fair sentences that factor in the relative culpability of all the participants.

b. Specific and General Deterrence

It is not necessary to incarcerate Mr. Reyna to deter him or others from engaging in similar conduct. Over 1,000 people have been prosecuted for their participation in the January 6 riot. The Department of Justice's impressive efforts in making sure that participants are charged and convicted is the best deterrent to those contemplating future actions similar to those of January 6. Research into deterrence of crime has shown that "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment." U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, Five Things About Deterrence, 2016. The massive number of prosecutions of January 6 participants, not any individual sentence imposed, will be the main driver that will deter future misconduct by others.

c. Avoiding Unwarranted Disparity Between Sentences

The Government's sentencing memorandum argues that a sentence of 14 days is appropriate by comparing this case to two cases in which Judge Chutkan imposed 14 days of incarnation. See *United States v. Brandon & Stephanie Miller*, 21-cr-266 (TSC) (cited as 21-cr-226 in the Government's brief) and *United States v. Michael McCormick*, 21-cr-710 (TSC). While both those cases involved defendants who entered the Capitol at the same place and around the same time as Mr. Reyna, those defendant's did not chose to

5

turn around as they entered. They marched through the Capitol and posted braggadocios content online for almost ten minutes before leaving.

The only case cited by the Government involving an entry nearly as short as Mr. Reyna's is *United States v. Nicholas Hendrix*, No. 21-cr-426 (CKK) (cited as 21-cr-429), where this Court imposed a 30-day sentence of incarceration for a 90 second entry. As the Government's memorandum notes, that case involved aggravating factors not present here. Hendrix attempted to enter the building a second time and in photographs and video is at or near the front of a group of rioters pushing against the police.

This court should look to cases of defendants who did not engage in violence, did not use violent rhetoric to spur others to action, and in the time since January 6, 2021, have lived law abiding lives staying clear of extremist politics. One such defendant sentenced by this Court was Cole Temple. Mr. Temple was a 22-year old laborer who entered the Capitol for approximately 15 minutes and shared videos of the event, but never engaged in violence or tried to persuade others to do so. This Court imposed a sentence of 36 months' probation. *United States v. Temple*, No. 22-cr-243 (CKK). A similar sentence is warranted in this case.

IV.

CONCLUSION

The events of January 6 were terrible for many reasons, not the least of which was the fact that people like Mr. Reyan acted as part of a mob in ways they would never have acted on their own, in ways they never acted before, and in ways they will never

act again. Mr. Reyna is ashamed and embarrassed by his actions. He is a productive member of his community and a loving son. This prosecution has already inflicted some punishment by causing him significant stress and worry regarding his employment. A custodial sentence is unnecessary to fulfill the goals of 18 U.S.C. §3553. This Court should impose a probationary sentence with a requirement to complete community service.

Respectfully submitted,

FEDERAL COMMUNITY DEFENDER

s/James R. Gerometta
Assistant Federal Defender
613 Abbott Street, Suite 500
Detroit, MI 48226
Phone: 313-967-5839
E-mail: james_gerometta@fd.org
P60260

Dated: May 3, 2024